Case 2:23-cv-00166   Document 36   Filed on 03/31/25 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
March 31, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHIC HENDERSON, | § | |
| | § | |
| Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. 2:23-CV-00166 |
| | § | |
| WELLS FARGO BANK, | § | |
| | § | |
| Defendant. | § | |

## ORDER ADOPTING IN PART MEMORANDUM AND RECOMMENDATION

Before the Court is Magistrate Judge Julie K. Hampton's Memorandum and Recommendation ("M&R"). (D.E. 33). The M&R recommends that the Court:

(1) Grant Defendant's Motion to Dismiss, (D.E. 27); and

(2) Dismiss Plaintiff's cause of action, (D.E. 26).

(D.E. 33, p. 1, 16). Plaintiff filed written objections to the M&R. (D.E. 34). Defendant filed written responses to Plaintiff's objections to the M&R. (D.E. 35).

When a party objects to the findings and recommendations of a magistrate judge, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). As to any portion for which no objection is filed, a district court reviews for clearly erroneous factual findings and conclusions of law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

### I. Analysis

#### A. Preemption of Breach of Contract and Negligence Claims

Plaintiff objects to the M&R's findings that his common law claims for negligence and breach of contract are preempted by Article 4A of the Texas Business and Commerce Code.

(D.E. 34, p. 4). In support, Plaintiff argues that the preemption provision of Article 4A is not absolute and does not preempt all common law claims between parties to a funds transfer. (D.E. 34, p. 1–2). Rather, the provision only preempts claims that contradict one of the Article's clauses. *Id.*

"Article 4A establishes 'precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits of liability' regarding funds transfers." *Sols. v. First State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132, at *3 (E.D. Tex. Apr. 16, 2020) (Kernodle, J.) (quoting Tex. Bus. & Com. Code Ann. § 4A.102, cmt.). "[T]o the extent the conduct falls within the scope of Article 4A, the statute controls, whether the common law is inconsistent or duplicative of it." *Id.* (collecting cases). "This does not mean that Article 4A displaces all common law claims." *Id.* (citing *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003)). In other words, when "claims are based on alleged conduct occurring before or after the automated funds transfer, they are not preempted." *Id.* at *4. When evaluating if a claim is preempted, courts also consider if "additional facts or conduct potentially lying outside the scope of Art[icle] 4A are at issue." *Consorcio Indus. de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2111-K, 2012 WL 13019678, at *3 (N.D. Tex. July 12, 2012) (Kinkeade, J.). If the conduct is not squarely addressed by Article 4's provisions, preemption is less likely to apply. *See id.* (collecting cases).

### i. Preemption of Breach of Contract Claim

In support of his breach of contract claim, Plaintiff emphasizes this claim "is not based on the wire transfer itself or on any claim that [Defendant] mishandled the wire transfer." (D.E. 34, p. 5). Rather, he maintains that Defendant "[failed] to provide the standard fraud protection associated with [Plaintiff's] checking and savings accounts, as well as additional fraud protection for which [Plaintiff] was billed." *Id.* Based on Plaintiff's second amended complaint, these failures

include: (1) not detecting when third parties gained access to the online banking application before the transfer, and (2) failing to provide the contracted-for fraud protection. (D.E. 33, p. 4; D.E. 26, p. 5). Upon review, Article 4A does not preempt the conduct alleged by Plaintiff.

"To determine whether a claim is 'covered by particular provisions' of Article 4A, courts look to whether 'additional facts or conduct potentially lying outside the scope of [Article 4A] are at issue.'" *Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:22-CV-2805-L-BH, 2023 WL 5022287, at *4 (N.D. Tex. July 21, 2023) (Ramirez, Mag. J.) (quoting *Consorcio*, 2012 WL 13019678, at *3), *adopted*, No. 3:22-CV-2805-L, 2023 WL 5022681 (N.D. Tex. Aug. 7, 2023) (Lindsay, J.). "If the conduct at issue or factual circumstances of the claim are 'not addressed squarely by the provisions of the article, courts are more likely to find that preemption does not apply.'" *3T Oil & Gas Servs., LLC v. JPMorgan Chase Bank, N.A.*, No. A-18-CV-131-LY, 2018 WL 5018483, at *3 (W.D. Tex. Oct. 16, 2018) (Austin, Mag. J.) (quoting *Consorcio*, 2012 WL 13019678, at *3), *adopted*, 2018 WL 6220139 (W.D. Tex. Nov. 1, 2018) (Yeakel, J.). In other words, whether Article 4A preempts Plaintiff's claims depends on whether the conduct and facts giving rise to the claims are squarely covered by Article 4A. *Id.*

Article 4A's scheme consists of "the interlocking provisions of" § 4A.202, § 4A.203, and § 4A.204. *Ison-Newsome*, 2023 WL 5022287, at *4 (citing *Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 75 (S.D.N.Y. 2023) (Liman, J.)). Article 4A's scheme covers a receiving bank's obligations when it receives an unauthorized or ineffective payment, § 4A.204(a); when a payment order is authorized, § 4A.202(a); and when a payment order is effective, § 4A.202(b). Each of these provisions deals with "[w]hether the bank or customer bears the risk of loss for a fraudulent wire transfer . . . ." *Ison-Newsome*, 2023 WL5022287, at *4 (citing *Essilor*, 650 F. Supp. 3d at 75).

The conduct Plaintiff alleges does not involve the issuance or acceptance of the payment order. He similarly neither alleges issues with the execution of the payment order, nor that it was ineffective or unauthorized under Article 4A. Lastly, he does not allege errors related to payment. *See generally* (D.E. 26, p. 5–6). While his harm ultimately resulted from the wire transfer, Plaintiff alleges that the actionable harm central to his breach of contract claim is Defendant's failure to uphold the contracted fraud protection and its failure to prevent third-party access to his account. To the extent Plaintiff has alleged conduct preceding the wire transfer and encompassing Defendant's obligation to provide said fraud prevention services, that conduct is not covered by Article 4A. *See Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:22-CV-2805-L-BH, 2023 WL 5022287, at *4 (noting that Article 4A only displaces claims that "create rights, duties and liabilities inconsistent with" Article 4A, or when the circumstances "giving rise to that claim are directly addressed or specifically covered by the provisions of Article 4A." (citations omitted)).

The M&R relied on *Grainmarket, LLC v. PNC Bank, N.A.*, No. 3:22-CV-2419- X, 2023 WL 4162278 (N.D. Tex. June 23, 2023) (Starr, J.), *see* (D.E. 33, p. 7–8), but that case is distinguishable. There, the plaintiff's common law claims were preempted where he alleged the bank failed to verify that the payment order was between the bank and himself. *Grainmarket*, 2023 WL 4162278, at *2. This was because Article 4A "governs situations in which 'a bank and its customer have agreed that the authenticity of payment orders . . . will be verified pursuant to a security procedure.'" *Id.* at 2 (quoting Tex. Bus. & Com. Code Ann. § 4A.202(b)).

By contrast, Plaintiff's underlying contract does not involve a security procedure under Article 4A. Article 4A defines "security procedures" as procedures for "(i) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication."

Tex. Bus. & Com. Code Ann. § 4A.201. As such, actions arising from verifying a payment order or detecting error in a payment's transmission fall within Article 4A's ambit. But here, Plaintiff alleges netiher failures to verify identity nor errors in transmission. Rather, Plaintiff sues Defendant for "allow[ing] unauthorized third-parties to access [his] banking information" prior to the transfer process and for Defendant's failure to "notice this activity or inform [him] of it." (D.E. 33, p. 4). These alleged duties exceed the scope of Article 4A because they do not seek to assign duties and liabilities for wire-transfer procedures. *Ison-Newsome*, 2023 WL 5022287, at *4 (citing *Essilor*, 650 F. Supp. 3d at 75).[1]

Likewise, insofar as Plaintiff's breach of contract claims exceed the scope of issuing, accepting, and executing wire transfers, they implicate obligations "that go well beyond the scope of wire transfer services." *See Hedged Inv. Partners*, 578 N.W.2d at 771. Indeed, Plaintiff asserts "[his] breach of contract claim is not based on the wire transfer itself or on any claim that [Defendant] mishandled the wire transfer, but rather is based on alleged failures by [Defendant] before the wire transfer occurred." (D.E. 34, p. 5).

Accepting this pleading as true, Plaintiff's breach of contract claim is not preempted. *See Ison-Newsome*, 2023 WL 5022287, at *4; *Essilor*, 650 F. Supp. 3d at 84 (claim not preempted where plaintiff's allegations implicated actions that did not involve wire transfers and were not about how wire transfers were conducted).

Therefore, the Court **SUSTAINS** Plaintiff's objection to the M&R's findings that

---

[1] Other state courts have also recognized breach of contract claims which are not preempted by Article 4A. For example, in *Hedged Investment Partners, L.P. v. Norwest Bank Minnesota, N.A.*, the plaintiffs sued under a breach of contract theory based on the parties' Agency Agreement which created several fiduciary duties. 578 N.W.2d 765, 768 (Minn. Ct. App. 1998). The plaintiffs similarly sought to recover wire transfers, but the defendant's employees were not aware of the required procedures or terms of the Agency Agreement. *Id.* at 769. The Minnesota court concluded that Article 4A did not provide exclusive relief because "[t]he Agency Agreement between HIP and Norwest cover[ed] specific fiduciary responsibilities that go well beyond the scope of wire transfer services." *Id.* at 771.

Plaintiff's breach of contract claim is preempted.

### ii. Preemption of Negligence Claims

Similarly, Plaintiff maintains that Article 4A does not preempt his negligence claim because he does not assert negligent mishandling of the wire transfer itself. (D.E. 34, p. 6). Rather, Plaintiff maintains (1) that before the transfer was executed, "[Defendant] failed to meet its duty to provide 'reasonable fraud protection methods to prevent unauthorized access to [Plaintiff's] accounts,'" (D.E. 34, p. 6); and (2) Defendant failed to take action in a timely manner, including issuing a necessary wire transfer recall after the transfer. *Id.* at 5–6.

Article 4A does not preempt Plaintiff's negligence claims relating to failures *before* the transfer. Duties to prevent unauthorized access do not relate to the wire transfer itself and are not covered by Article 4A. *See 3T Oil*, 2018 WL 5018483, at *3 (holding no preemption as negligent misrepresentation claim was not based on the wire transfer itself). Article 4A also does not preempt Plaintiff's negligence claims to the extent they arise out of Defendant's failure to train its employees. *See Squeeze Me Once, LLC v. SunTrust Bank*, No. CV 19-787-JWD-RLB, 2020 WL 12968001, at *10 (M.D. La. Aug. 3, 2020) (deGravelles, J.) (concluding that negligent claims arising out of failure to train employees on fraud and take reasonable investigative action were *not* preempted as they did not fall squarely within Article 4A's ambit).

On the other hand, Article 4A does preempt Plaintiff's negligence claim relating to failures *after* the transfer. As the M&R observed, such claims clearly relate to a provision of Article 4A. (D.E. 33, p. 8–9). Article 4A speaks directly to procedures for cancelling and amending payment orders. Tex. Bus. & Comm. Code Ann. § 4A.211. Thus, Plaintiff's negligence claims as to the wire transfer recall are preempted. *See Sols.*, 2020 WL 12991132, at *4 (preempting negligence claims based on automated funds transfers governed by § 4A.207, but not claims based on conduct

occurring before or after the transfers).

Therefore, the Court **SUSTAINS** Plaintiff's objection as to his negligence claims relating to conduct before the wire transfer but **OVERRULES** his objection relating to conduct after the transfer—specifically, the duty to provide a wire transfer recall.

### B. Failure to State a Claim Upon Which Relief Can Be Granted

Plaintiff objects to the M&R's findings that he has failed to adequately plead a breach of contract claim. (D.E. 34, p. 8–9). Plaintiff also objects to the finding that he had failed to plead a negligence claim as barred by the economic loss doctrine. *Id.* at 9–10.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). While a sufficient complaint does not require detailed factual allegations, the facts pled must raise the plaintiff's "right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). Courts must draw all reasonable inferences in favor of the plaintiff, *Allen v. Vertafore, Inc.*, 28 F.4th 613, 617 (5th Cir. 2022); however, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

#### i. Failure to State a Breach of Contract Claim

"To satisfy a claim for breach of contract under Texas law, a plaintiff must show: (1) a valid contract between the parties; (2) performance was completed or tendered by the plaintiff; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the

breach." *Siegfried v. JPMorgan Chase*, N.A., No. 1:18-CV-1026-LY, 2019 WL 13194134, at *7 (W.D. Tex. Oct. 25, 2019) (Lane, Mag. J.) (citing *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 669 F. App'x 219, 220 (5th Cir. 2016)).[2] As the M&R noted, *see* (D.E. 33, p. 10), "to state a plausible breach of contract claim a plaintiff must allege which provision of an identified contract has been breached." *Caine v. Wells Fargo Bank, N.A.*, No. CV H-17-2046, 2018 WL 3195102, at *3 (S.D. Tex. June 8, 2018) (Stacy, Mag. J.) (citing *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x. 233, 238 (5th Cir. 2014) (per curiam)), *adopted*, No. 4:17-CV-02046, 2018 WL 3159783 (S.D. Tex. June 28, 2018) (Bennett, J.).

To pass 12(b)(6) muster, a breach of contract claim must contain "the substance of the contract which supports the pleader's right to recover." *See Bayway Servs., Inc. v. Ameri-Build Const., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Cadle Co. v. Castle*, 913 S.W.2d 627, 630–31 (Tex.App. —Dallas 1995, writ denied)). A claim meets this standard if it either "identif[ies] what provisions were breached or provide[s] factual allegations about the terms of the [contract]." *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 603 (N.D. Tex. 2014) (O'Connor, J.). Here, Plaintiff's amended complaint points to the "standard fraud protection" and "additional fraud protection" as provisions of the contract that Defendant allegedly breached. (D.E. 26, p. 5). Plaintiff contends that Defendant's failure "to provide the contracted-for protection" against fraud allowed an unauthorized third-party to access his account. *Id.* Moreover, Plaintiff provides factual allegations about the terms of the contract. Plaintiff alleges that, "[u]nbeknownst to [Plaintiff], [Defendant] was not providing [Plaintiff] with any meaningful fraud protection." *Id.* at 2. This

---

[2] In *Siegfried*, a week after the M&R addressing the defendant's motion to dismiss was entered, the parties entered an agreed stipulation. *See Siegfried*, No. 1:18-CV-1026, (D.E. 49). The court subsequently denied the motion to dismiss based on the agreed stipulation, obviating the need to address the M&R. *Id.* (D.E. 52).

factual allegation allows the Court to infer that the contract had at least one term that required Defendant to provide meaningful fraud protection.

While Defendant claims that Plaintiff now fails to identify any contract despite "acknowledging and attaching the controlling agreement" in his first amended complaint, *see* (D.E. 27, p. 9), Plaintiff's operative complaint alleges a *different* contract—namely, the "terms of service for personal checking and savings accounts" that contains a "fraud protection" provision. *See* (D.E. 26, p. 5; D.E. 34, p. 9). And that is the contract he alleges Defendant breached. (D.E. 26, p. 5; D.E. 34, p. 9).

Plaintiff has pled factual content—Plaintiff and Defendant had a contract that provided for "standard fraud protection" and "additional fraud protection"—that allows the Court to draw the reasonable inference that Defendant could be liable for breach of contract. *See Cicalese*, 924 F.3d at 765. In other words, if Plaintiff and Defendant contracted for fraud protection and additional fraud protection in Defendant's terms of service agreement, and Defendant failed to provide the agreed fraud protection, then Plaintiff has a viable breach of contract claim. *See* (D.E. 26, p. 5). As the Court must take the complaint's allegations as true, Plaintiff states a breach of contract claim.[3] *See Cicalese*, 924 F.3d at 765.

Thus, the Court **SUSTAINS** Plaintiff's objections to the M&R's conclusion that Plaintiff has failed to state a claim for breach of contract.

---

[3] Plaintiff's complaint suggests the possibility that two different contracts exist, each of which had fraud protection provisions (the standard fraud protection and the additional fraud protection). (D.E. 26, p. 5). Because there are sufficient facts to support a breach of contract claim on at least one contract, the Court does not determine whether second contract, which provides for "additional fraud protection," exists. The Court notes, however, that neither party has submitted the terms of service contract for the Court's review. While not necessary to pass the motion to dismiss stage, the specific terms of the contract would have assisted the Court in determining whether Plaintiff failed to state a claim.

### *ii. Failure to State a Negligence Claim*

The M&R next concluded that the economic-loss doctrine barred Plaintiff's negligence claim. (D.E. 33, p. 13). The M&R reasoned that any duty Defendant had to engage in fraud protection or recall the wire transfer (and any corresponding duty to train its employees on those two duties) was based in Plaintiff's contract with Defendant—specifically, "his account agreements and the wire transfer agreement." *Id.* Plaintiff objects, contending that "[he] did not have an expectation under the parties' contract that [Defendant] would properly train its employees to combat known fraud after a wire transfer." (D.E. 34, p. 10). Instead, Plaintiff maintains that [Defendant's] duties are "general obligations that are imposed by law." *Id.*

However, as Defendant points out, Plaintiff fails to plausibly allege that Defendant's actions or omissions proximately caused Plaintiff's harm. (D.E. 27, p. 12). Plaintiff alleges that "[i]t was foreseeable that [Defendant's] failure to" act on the wire transfer would cause Plaintiff harm. (D.E. 26, p. 6). But, as Defendant points out, the intervening act of a third party can break causation and relieve the potential tortfeasor of liability. *See, e.g., Parker & Parker Const. Co. v. Morris*, 346 S.W.2d 922 (Tex. App.—El Paso 1961, *writ ref'd n.r.e.*) (reversing judgment where a third party causing an accident sufficed as an "independent, intervening cause" that severed causation). Plaintiff's complaint contains no allegations as to the foreseeability of fraudsters hacking and manipulating his account (or bank accounts in general). *Cf. Urbach v. United States*, 869 F.2d 829, 833 (5th Cir. 1989) (torts foreseeable "because of prior experiences"). In other words, Plaintiff alleges no prior experiences that might make the intervening act—here, the criminal(s) who defrauded Plaintiff—foreseeable to Defendant. *See generally* (D.E. 26, p. 2–6).

In sum, Plaintiff's negligence claim cannot pass 12(b)(6) muster based on causation. Thus, the Court **OVERRULES as moot** Plaintiff's objections to the M&R's conclusion that the

economic loss doctrine bars Plaintiff's negligence claim.[4]

### C. Leave to file Third Amended Complaint

Plaintiff requests the opportunity to once again amend his complaint. (D.E. 34, p. 11). Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." FED. R. CIV. P. 15(a). While "[l]eave to amend is [not] automatic," the "district court must possess a 'substantial reason' to deny a party's request for leave to amend." *See Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)). When evaluating a request to amend, the court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Matter of Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996) (first citing *Foman v. Davis*, 371 U.S. 178, 181 (1962); and then citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)).

After careful review, the Court will allow Plaintiff to file a motion for leave to amend his complaint as to the negligence claims, with the proposed amended complaint attached to the motion.

---

[4] The "Federal Rules of Civil Procedure allow a party to assert separate claims under alternative theories of liability." *Fulcrum Credit Partners LLC v. ChipMOS Techs. Inc.*, 2010 WL 11444280, at *8 (Sparks, J.) (citing FED. R. CIV. P. 8(d)(2)). And a plaintiff does not need the magic words "in the alternative" to successfully plead an alternative theory. *Id.* (citation omitted). Here, Plaintiff pleads in the alternative. (D.E. 26, p. 6). Other courts have found dismissing negligence claims—at the motion to dismiss stage—on economic-loss doctrine grounds is inappropriate because plaintiffs can plead under alternative theories. *See e.g.*, *Hybrid Energy Servs., Ltd. v. Magness Oilfield Brokerage*, LLC, No. 5:16-CV-090-C, 2016 WL 11673473, at *3 (N.D. Tex. Aug. 5, 2016) (Cummings, J.) ("Dismissal on [the economic-loss rule] ground is inappropriate at this stage of the litigation, however, because [the plaintiff] is entitled to plead meritorious claims under alternative theories of contract and negligent misrepresentation or fraud, even if it cannot ultimately recover under each of these theories."); *Sunday Riley Mod. Skin Care, L.L.C. v. Maesa*, No. CIV.A. H-12-1650, 2014 WL 722870, at *5 (S.D. Tex. Feb. 20, 2014) (Harmon, J.) ("The economic loss rule does not prevent parties from pleading multiple theories of liability; it bars them from recovering economic losses caused by a breach of contract on a negligence theory." (collecting cases)).

## II. Conclusion

Having reviewed the proposed findings and conclusions of the M&R, the record, the applicable law, and having made a de novo review of the portions of the M&R to which Plaintiff's objections are directed, 28 U.S.C. § 636(b)(1)(C), the Court **SUSTAINS in part** and **OVERRULES in part** Plaintiff's objections, (D.E. 34), and **ADOPTS in part** the M&R, (D.E. 33). Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to dismiss. (D.E. 27).

Plaintiff may move to amend his complaint, as to his negligence claims, with the proposed amended complaint attached to the motion, **on or before April 14, 2025.**

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
March 31st, 2025